UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUKOR CAR CARRIERS INC., | ) |
| Plaintiff(s), | ) No. C10-0408 BZ |
| v. | ) |
| | ) **ORDER GRANTING DEFENDANT'S** |
| CHEMOIL CORPORATION, | ) **MOTION TO STAY** |
| Defendant(s). | ) |

Before the Court is defendant Chemoil's motion to stay this action pending arbitration. The primary issue is whether the arbitration clause in the contract to which Chemoil and non-party Wilhelmsen are signatories is binding on plaintiff Eukor. For the following reasons, Chemoil's motion is **GRANTED**.

Eukor Car Carriers Inc. ("Eukor") chartered a vessel, which required RMG-380 fuel oil. Eukor hired its affiliated company, non-party Wilhelmsen Premier Marine Fuels AS ("Wilhelmsen"), to secure the fuel. Wilhelmsen, a back-to-back fuel trader, contracted with Chemoil Corporation ("Chemoil") to purchase the fuel for Eukor. The contract

1

1  between Wilhelmsen and Chemoil requires disputes regarding the
2  quality or quantity of fuel delivered to be settled by binding
3  arbitration.  Allegedly, the fuel that Chemoil delivered
4  directly to Eukor did not meet the RMG-380 specification and
5  caused the vessel to break down.  In November of 2008, the
6  vessel owners commenced an arbitration in London, which is
7  still pending, against Eukor for the damages to the vessel and
8  lost hire.  Chemoil is not a party to that arbitration.

9      Eukor filed this action against Chemoil alleging
10 negligence and requesting declaratory relief.  Eukor alleges
11 that Chemoil's provision of off-specification fuel caused it
12 damages consisting of additional hire paid to the vessel
13 owners, costs of vessel repairs, and costs of replacement
14 bunkers.  Eukor did not sue Wilhelmsen.  Eukor and Wilhelmsen
15 are affiliated in that Wilh. Wilhelmsen ASA has an ownership
16 interest in both companies.  The parties have an extensive
17 course of dealing as Eukor has contracted with Chemoil for
18 fuel at least 145 times, and with Wilhelmsen at least 440
19 times.  Part of Chemoil's standard contract is the arbitration
20 clause that is at issue in this litigation.

21     Eukor's primary argument is that since it did not sign
22 the contract between Wilhelmsen and Chemoil, the arbitration
23 clause is inapplicable to this dispute.  The Ninth Circuit
24 squarely addressed the issue of when an arbitration agreement
25 may apply to nonsignatories in <u>Comer v. Micor, Inc.</u>, 436 F.3d
26 1098 (9th Cir. 2006).  <u>Comer</u> held that "nonsignatories of
27 arbitration agreements may be bound by the agreement under
28 ordinary contract and agency principles."  <u>Id.</u> at 1101 citing

2

1   <u>Letizia v. Prudential Bache Securities, Inc.</u>, 802 F.2d 1185,
2   1187-89 (9th Cir. 1986).  The court articulated six such
3   principles although only equitable estoppel appears relevant
4   to this action.
5        "Equitable estoppel 'precludes a party from claiming the
6   benefits of a contract while simultaneously attempting to
7   avoid the burdens that contract imposes.'"   <u>Comer</u>, 426 F.3d
8   at 1101 (internal citations omitted). "Nonsignatories have
9   been held to arbitration clauses where the nonsignatory
10  'knowingly exploits the agreement containing the arbitration
11  clause despite having never signed the agreement.'" <u>Id.</u> citing
12  <u>E.I. DuPont de Nemours & Co. v. Rhone Polenc Fiber & Resin</u>
13  <u>Intermediates</u>, 269 F.3d 187, 199 (3d Cir. 2001).  See also
14  <u>World Group Securities, Inc. v. Allen</u>, 2007 WL 4168572, *3
15  (D.Ariz. 2007) (collecting cases and stating that "courts have
16  concluded that a nonsignatory to a contract containing an
17  arbitration clause may be estopped from refusing to comply
18  with that clause if the nonsignatory knowingly receives a
19  'direct benefit' from the underlying contract") (internal
20  citations omitted).
21       Here, several considerations weigh in favor of finding
22  estoppel.  First, plaintiff essentially recast a breach of
23  contract claim as a negligence claim.  The complaint states
24  that Eukor's losses were caused by Chemoil's "supply of the
25  Off-Specification Bunkers."  Compl. ¶ 14.  However, the only
26  relevant "specification" is the RMG-380 fuel grade
27  specification, a term contained in the contract between
28  Wilhelmsen and Chemoil.  It is difficult to conceive of a duty

to provide RMG-380 fuel separate and apart from the contract. While Eukor disclaims any obligations under the contract, it now seeks to "exploit the agreement containing the arbitration clause" by suing Chemoil for its alleged failure to deliver fuel that met the specifications of the contract.  Second, the parties have an extensive course of dealing; Eukor knew that fuel quality disputes with Chemoil are covered by the arbitration clause.  Eukor's employment of a third party, particularly an affiliate, to act as an intermediary should not insulate it from the arbitration clause that it knew controlled.  Third, resolution of this claim is premature. The London arbitration that has already been pending for 18 months is not yet completed, and the relief sought in this case partly depends on the result of that arbitration.[1]

At oral argument and in subsequent briefing, Eukor tried to avoid equitable estoppel by changing the thrust of its lawsuit.  Rather than this being a suit for failure to deliver fuel of a grade specified in the contract, Eukor now asserts that its real claim is for defective fuel and that the RMG-380 specification is not unlike calling gasoline super and then suing in court if the gasoline was not.

I find this argument unpersuasive for a number of

---

[1]  Even in the absence of an arbitration provision in the Chemoil contract, the Court would have stayed this action pending completion of the arbitration between Eukor and the vessel owners.  The relief Eukor seeks in this action is largely intertwined with the issues pending in that arbitration.  Allowing parallel proceedings is not in the interests of justice and likely to result in duplicative work. For example, depositions might have to be retaken should the London arbitration alter Eukor's claims.

1  reasons.  First, there is no factual support for it.  Second,
2  the complaint specifies Chemoil's failure is its delivery to
3  Eukor of fuel that did not meet the contract's RMG-380
4  specification.  No where does Eukor explain the source of
5  Eukor's duty to deliver fuel of such a specification, unless
6  it is in the contract, absent the factual showing discussed
7  above.  Finally, without offering any view as to whether the
8  result would have been the same had Eukor simply sued Chemoil
9  for providing defective fuel, it would not be equitable to
10 permit Eukor to change its theory of liability merely to avoid
11 arbitration based on the theory it alleged in the complaint.

12       I therefore find that Eukor is equitably estopped from
13 denying the applicability of the arbitration clause.  **IT IS**
14 **ORDERED** that this action is stayed pending resolution of any
15 arbitration.  **IT IS FURTHER ORDERED** that the parties shall
16 notify the Court of any developments which may require this
17 matter to be reactivated and that in the interim the Clerk
18 shall administratively close this file.
19 Dated: May 21, 2010

                                  _____
                                         Bernard Zimmerman
                                  United States Magistrate Judge

25 G:\BZALL\-BZCASES\EUKOR V. CHEMOIL\ORDER GRANTING DEFS MOT TO STAY.FINAL RULING.wpd